[No. B226338. Second Dist., Div. Eight. Sept. 9, 2011.]

CHRISTINE SHUGART et al., Plaintiffs and Appellants, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

**COUNSEL**

The Ehrlich Law Firm, Jeffrey Isaac Ehrlich; Hoyt E. Hart II; Law Offices of Indra Lahiri, Indra Lahiri; Law Offices of Kyle W. Jones and Kyle W. Jones for Plaintiffs and Appellants.

Cole Pedroza, Kenneth R. Pedroza, Cassidy E. Cole; Weiss, Martin, Salinas & Hearst, Lisa M. Martin and Kirsten K. Corey for Defendant and Respondent Linda Warren.

Greines, Martin, Stein & Richland, Martin Stein, Marc J. Poster; Fonda & Fraser, Stephen C. Fraser, Craig R. Donahue and Armen G. Derian for Defendant and Respondent Regents of the University of California.

## OPINION

**GRIMES, J.**—Plaintiffs Christine and Michael Shugart appeal from the entry of summary judgments in favor of defendants Linda Warren, M.D., and The Regents of the University of California (Regents). We conclude the trial court correctly entered judgment in favor of the Regents because plaintiffs' opposition papers failed to raise a triable issue of fact, and we therefore affirm as to the Regents. However, we reverse the summary judgment in favor of Dr. Warren, finding plaintiffs' expert declaration was admissible and raised triable issues as to Dr. Warren's alleged medical negligence.

## FACTS

Christine Shugart (hereafter Christine)[1] first visited Dr. Warren, a gynecologist, in June 2007 as a new patient. Christine was 48 years old at the time. She advised Dr. Warren she suffered from urinary incontinence and had to manually manipulate her perineum in order to defecate, symptoms she had had for a couple of years. Christine had previously had a hysterectomy and also sought a renewal of her hormone prescription. Dr. Warren took a history from Christine, performed an examination and Pap test, and diagnosed Christine as having stress urinary incontinence and other problems.

Dr. Warren recommended two surgical procedures to address Christine's symptoms. On August 22, 2007, Christine was admitted to Mercy Southwest Hospital in Bakersfield, and Dr. Warren performed a transvaginal tape placement and a posterior vaginal repair. Following surgery, Christine's vital signs were stable and she was transferred to the recovery room. As Christine started to wake from the anesthesia, a nurse noted heavy vaginal bleeding. Christine was returned to the operating room to determine the source of the bleeding. Dr. Warren located some "oozing" in one incision and placed additional sutures. Christine was then taken back to the recovery room in stable condition. The next day, she was released from the hospital with directions to return in two weeks for a postoperative visit.

The first postoperative visit was on September 5, 2007. Christine was experiencing a brownish discharge. Dr. Warren examined Christine, had her

---

[1] Because of plaintiffs' common surname, we use the first name for sake of clarity only and intend no disrespect by the informality.

provide a urine sample and prescribed antibiotics for an infection. Christine was told to return again in two weeks. On September 14, Christine told Dr. Warren she was experiencing pain, more so than immediately after the surgery. Dr. Warren examined Christine, noticed a protruding suture, which she deemed the likely cause of irritation, and removed it. Christine returned again for an examination on September 27. Dr. Warren noted a portion of the tape was "palpated lateral to the urethra." Dr. Warren cut the tape slightly to release the "pinching" and nicked the vaginal mucosa, causing some bleeding. Christine was advised her infection was resistant to the antibiotics, so she was prescribed a different antibiotic. She was told again to return in two weeks.

On October 3, 2007, Christine went to Dr. Warren's office, complaining of continuing problems, although she was continent. During the vaginal examination, Dr. Warren noted some of the blue mesh/tape was protruding from the incision site. She prescribed a vaginal cream to assist in the healing process and told Christine to return in four weeks. Christine returned to Dr. Warren in early November, complaining that her symptoms were getting worse. During the pelvic examination, Dr. Warren noted there was "mesh protruding from the vaginal mucosa on the right and midline." Dr. Warren referred Christine to Dr. Shlomo Raz, a urologist employed by the Regents at the UCLA Medical Center in Westwood. After the referral in November 2007, Christine received no further treatment from Dr. Warren.

Christine's first visit with Dr. Raz was on November 28, 2007. Dr. Raz, along with Dr. Adriana Smith, examined Christine and consulted with her about her condition, including the incontinence symptoms and the apparent erosion of the transvaginal tape surgically placed by Dr. Warren. Over the course of two days in January 2008, Christine underwent a full patient evaluation and testing. Dr. Raz advised of his recommendations for how to proceed with Christine's treatment, including additional surgical procedures. Christine agreed, and Dr. Raz, assisted by Dr. Smith, performed the procedures on March 24, 2008.

Christine returned to the UCLA Medical Center for postoperative followup on May 13, 2008. She believed her recovery had been going "well," she had been feeling "wonderful," had not had any leakage and had been able to urinate and defecate without incident. During this visit, Dr. Ja Hong Kim, who was employed by the Regents, performed a pelvic examination on Christine, who experienced pain during the exam. Later that day, Christine felt sick to her stomach and noticed a brownish vaginal discharge, which continued for approximately two days. Christine began to experience incontinence problems again, so she made an appointment to see Dr. Raz.

On June 24, 2008, Dr. Raz examined Christine, performed additional testing, and advised Christine she needed further surgery. Dr. Raz performed the second set of surgeries on August 4, 2008. On September 9, 2008, Christine was seen by Dr. Raz and reported being "[p]leased, minimally bothered." However, Christine reported some continuing symptoms and difficulty urinating, and she was prescribed a further course of antibiotics. After this visit with Dr. Raz, Christine's health insurance carrier made certain contract changes with medical providers, including the UCLA Medical Center, and Christine received no further treatment from the Regents.

In November 2008, plaintiffs sued Dr. Warren, Dr. Kim and the Regents. The operative first amended complaint alleged medical negligence on behalf of Christine against all three named defendants, as well as unidentified Doe defendants.[2] Christine alleged she suffered permanent injury and impaired urological and sexual functions as a result of defendants' medical negligence. Michael Shugart, Christine's husband, sued for loss of consortium. Dr. Raz was not named as a defendant and there were no allegations of any wrongdoing by Dr. Raz. The only material allegation concerning Dr. Raz was that he performed surgical repair procedures on Christine to "very good effect."

In November 2009, Dr. Warren and the Regents filed motions for summary judgment. Dr. Warren's motion was based on the grounds there were no triable issues of fact on two elements of Christine's claim of negligence, i.e., breach of duty and causation. The motion was supported by two declarations from Dr. Warren, copies of the pertinent medical records, and the expert declaration of Dr. Bertha H. Chen. Dr. Chen opined that the care and treatment provided by Dr. Warren, both as to the surgeries and the postoperative care, met the standard of care and were not the cause of any of Christine's claimed injuries.

The Regents' motion was also based on the grounds the evidence established no triable issues on breach of duty and causation. The Regents submitted copies of the pertinent medical records, as well as discovery responses and selected deposition transcripts as supporting exhibits. The Regents' motion was further supported by the expert declaration of Dr. Arieh Bergman, who opined that the care and treatment provided by the Regents, including Dr. Kim, met the standard of care and did not cause any injury to Christine.

In opposition to each motion, plaintiffs submitted a declaration from Christine, attesting to the treatment she received and her ongoing medical

---

[2] Dr. Kim is not a party to this appeal. The parties apparently stipulated to the dismissal of Dr. Kim before the filing of the summary judgment motions, with plaintiffs proceeding against the Regents as the principal of Dr. Kim.

problems, as well as declarations from plaintiffs' retained medical expert, Dr. Donald R. Ostergard, who opined that Drs. Raz, Warren and Kim all committed acts below the standard of care which contributed to the permanent injuries suffered by Christine.

The hearings on both defense motions were scheduled for May 2010. The court issued tentative rulings granting both motions in advance of the hearings. The tentative rulings indicated the court's intent to grant the motions because the court deemed Dr. Ostergard's expert declarations to be deficient and lacking evidentiary value since they failed to refer to the materials on which Dr. Ostergard relied in forming his opinions.

At the May 10, 2010 hearing on the Regents' motion, plaintiffs, in light of the court's tentative rulings, made an oral request to continue the hearing in order to provide supplemental opposition papers to address the court's concerns. The hearing was continued to May 17, 2010, to allow plaintiffs to file a written motion for continuance on shortened notice. The court subsequently entertained argument on Dr. Warren's motion on May 14 and took it under submission. With their written motion to continue, plaintiffs submitted supplemental declarations by Dr. Ostergard containing specific citations to the previously referenced medical records, as well as copies of some of the pertinent records and deposition transcripts.

At the continued hearing, the court denied plaintiffs' written motion to continue and to submit supplemental papers, finding that plaintiffs failed to timely move for a continuance and failed to establish a proper basis for a continuance pursuant to Code of Civil Procedure, section 437c, subdivision (h). The summary judgment motions were taken under submission. On May 20, 2010, the court issued its order, granting both summary judgment motions, adopting its previously issued tentative rulings. Judgments were separately entered in favor of both defendants in June 2010. Dr. Warren and the Regents each served notice of entry of judgment. This appeal followed.

## DISCUSSION

Plaintiffs contend the trial court erred in refusing to consider the expert declarations of their medical expert, Dr. Ostergard. Plaintiffs argue the court misinterpreted the holding in *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735 [74 Cal.Rptr.3d 715] (*Garibay*) and erroneously determined their expert declarations lacked evidentiary value.

We independently review an order granting summary judgment. (*Aguilar v. Atlantlic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493].) We determine whether the court's ruling was correct, not its

reasons or rationale. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376 [63 Cal.Rptr.2d 522].) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925 [68 Cal.Rptr.2d 571].) We review for abuse of discretion any evidentiary ruling made in connection with the motion. (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122 [59 Cal.Rptr.3d 618] (*Powell*).)

### 1. *Dr. Warren's Motion for Summary Judgment Should Have Been Denied.*

In granting Dr. Warren's motion, the trial court reasoned, "Dr. Ostergard has not referenced or attached what particular materials he consulted and reviewed prior to rendering his expert opinion, or separately set forth any of the medical history of Christine Shugart as relevant here, as plaintiffs have not submitted any medical records at all. Ostergard's declaration therefore, has no evidentiary value." The court relied primarily on *Garibay* in concluding that plaintiffs failed to raise a triable issue of fact because of the deficiencies in their expert's declaration. We disagree, as the medical records Dr. Ostergard relied on were already properly authenticated and placed before the court by the moving party—the party with the statutory initial burden of production on summary judgment. (See Code Civ. Proc., § 437c, subd. (p)(2).)

The trial court erred in finding Dr. Ostergard's expert declaration lacked foundation and was inadmissible under *Garibay*. In *Garibay*, the court reversed a summary judgment entered in favor of the defendant doctor in a medical malpractice action, finding the expert declaration in support of the doctor's motion lacked foundation. (*Garibay*, *supra*, 161 Cal.App.4th at pp. 742–743.) The *Garibay* court found the defendant's medical expert had not demonstrated personal knowledge of the underlying facts on which he based his opinion because his declaration "attempted to testify to facts derived from medical and hospital records which were not properly before the court." (*Id.* at p. 743.) The moving papers did not include authenticated copies of the medical records on which the expert based his opinion. Because of the burden of production required of a moving party on summary judgment, *Garibay* found the movant's burden had not been satisfied, so the motion should have been denied. (*Ibid.*)

█ Here, Dr. Ostergard's declaration was submitted in support of plaintiffs' opposition to the motion for summary judgment. Dr. Ostergard stated in his declaration that he "reviewed the medical records, deposition transcript, and declarations of Christine Shugart." He explained his opinions in part by references to notations in the medical records of Dr. Warren that were

before the court in support of the moving papers. Dr. Warren's motion was supported by her declaration authenticating copies of Christine's medical records from her office, as well as copies of Christine's records from Mercy Southwest Hospital that were authenticated by that facility's custodian of records. The court found in its order of May 14, 2010, that the medical records in support of Dr. Warren's motion were properly authenticated. Accordingly, the foundational facts and medical records on which Dr. Ostergard relied as stated in his declaration were before the court to support his expert opinion. The *Garibay* case does not require a party opposing summary judgment to file duplicate copies of the medical records on which the opposing expert relied in forming a disputed expert opinion if they are already before the court in support of the motion.

■ Moreover, while Dr. Ostergard's declaration is not a model of specificity, it is sufficient to raise a triable issue of fact as to whether Dr. Warren's medical care of Christine met the standard of care in the medical community and whether that care caused or contributed to Christine's alleged damages. (*Powell, supra,* 151 Cal.App.4th at pp. 125–126; *Hanson v. Grode* (1999) 76 Cal.App.4th 601, 607 [90 Cal.Rptr.2d 396] (*Hanson*); *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332–1333 [86 Cal.Rptr.3d 274].) For example, Dr. Ostergard opined that "[p]ost-operatively Dr. Warren cut the vaginal wall underneath the mesh at the incision site[,] which allowed bacteria contaminating the vagina to enter the patient's tissues, thereby weaken[ing] the healing vaginal wall and promot[ing] the erosion of the mesh. . . . In the office visit of October 3, 2007, when the vaginal mesh was noted to be exposed in the vagina, Dr. Warren did not remove the exposed mesh but allowed this vaginal mesh to be exposed to the bacterially contaminated vagina for four weeks without excising it, thereby allowing bacteria to further enter the patient's tissues and further interfere with the healing process."

Indulging all reasonable inferences in support of Dr. Ostergard's testimony, his declaration adequately raises a triable issue as to whether or not Christine was unnecessarily exposed to the postoperative infection she suffered; whether the infection was aggravated by Dr. Warren's care, including the failure to timely excise the protruding mesh; and whether the recuperation time was unnecessarily prolonged, adversely affecting Christine's overall healing and ability to timely and adequately respond to the later-performed corrective procedures. That was enough to defeat Dr. Warren's motion. (*Hanson, supra,* 76 Cal.App.4th at pp. 607–608; *Powell, supra,* 151 Cal.App.4th at pp. 129–130.)

*2. Summary Judgment Was Properly Entered in Favor of the Regents.*

In opposition to the Regents' motion, plaintiffs submitted a separate expert declaration by Dr. Ostergard. As explained above, the trial court erred in finding that the declarations of Dr. Ostergard did not have sufficient evidentiary foundation to justify consideration. As acknowledged by the court in its May 10, 2010 order, all of the medical records pertaining to Christine submitted with the Regents' moving papers were duly authenticated by the requisite custodian of records. Dr. Ostergard's declaration, which relied on those same medical records, should therefore have been considered in resolving the Regents' motion, since the foundational facts upon which it was based were already before the court.

However, Dr. Ostergard's opinions as to the Regents' liability are deficient in *substance* to show a material disputed fact. Plaintiffs' operative pleading identified *only* Dr. Kim as the agent of the Regents who committed medical negligence. The only material allegation concerning Dr. Raz is that his surgical procedures were performed to "very good effect." There are no allegations of wrongdoing by Dr. Raz, and the specific allegations regarding him were favorable and excluded him from the general allegation of negligence directed at unidentified Doe agents. The Regents' motion for summary judgment therefore properly rested on demonstrating there was no disputed fact as to the care and treatment provided by Dr. Kim. Plaintiffs' allegation of wrongdoing against Dr. Kim was limited to Dr. Kim's allegedly negligent vaginal examination of Christine at the May 13, 2008 postoperative visit.

The Regents presented the expert declaration of Dr. Bergman, board certified in obstetrics and gynecology and a clinical professor at USC Medical School, who offered his opinion that the care and treatment provided by the Regents were within the applicable standard of care. "Taking an updated history and performing a vaginal examination involving palpation of the operative site are essential components of follow-up evaluation after [surgery of the type performed], and are required to comply with the standard of care. The vaginal examination by Dr. Kim allowed her to assess Christine Shugart's physical status, which Dr. Kim found to be good support of urethra, moderate mobility, and no defects were noted. The performance of the vaginal examination was within the standard of care. Post[]operative vaginal examinations may dislodge hematomas, which would present as brownish spotting, as described by Christine Shugart. There is no indication that Christine Shugart had acute injury from the examination."

Dr. Bergman further attested that Dr. Kim complied with the standard of care at all times and that nothing Dr. Kim or the Regents did with respect to Christine's care caused or contributed to any injury. He also explained that

Dr. Kim's examination occurred almost seven weeks after the surgical procedures had been performed—a period of time approximately equal to when sutures ordinarily begin to dissolve, resulting in the potential for signs of failure from the procedures, even in the absence of negligence.

The *only* statement in Dr. Ostergard's opposing declaration pertaining to the vaginal examination by Dr. Kim is: "The May 13, 2008, pelvic exam accelerated the failure of the first procedure." This wholly conclusory statement is insufficient to raise a triable issue. Nothing in Dr. Ostergard's declaration would assist in determining whether any act of Dr. Kim was performed below the standard of care or caused any injury to Christine. "[A]n expert's conclusory opinion that something did occur, when unaccompanied by a reasoned explanation illuminating how the expert employed his or her superior knowledge and training to connect the facts with the ultimate conclusion, does not assist the [fact finder]." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 [8 Cal.Rptr.3d 363]; see also Evid. Code, § 801.)

The balance of Dr. Ostergard's declaration focused entirely on Dr. Raz, despite the fact that plaintiffs' operative pleading contains no allegations of wrongdoing by Dr. Raz. "A sufficient motion cannot be successfully resisted by counterdeclarations which create immaterial factual conflicts outside the scope of the pleadings; *counterdeclarations are no substitute for amended pleadings.*" (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065 [225 Cal.Rptr. 203], italics added.) If plaintiffs wanted to raise new factual issues not embraced by their pleading, they should have sought leave to amend before the hearing on the Regents' motion. (*Leibert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1699 [39 Cal.Rptr.2d 65]; *580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 18 [272 Cal.Rptr. 227].) Plaintiffs did not ask the trial court for leave to amend the complaint to allege malpractice by Dr. Raz before or at the hearing on the Regents' summary judgment motion, and they do not assert on appeal that they should have been permitted to amend the complaint before the trial court ruled on the Regents' motion.

Plaintiffs' citations, in their reply brief, to cases standing for the general proposition that a plaintiff need not name or join allegedly negligent agents in order to sue the responsible principal are of no assistance. Plaintiffs affirmatively alleged specific allegations favorable to Dr. Raz in their operative pleading. Those allegations excluded him from the general allegations of unspecified acts of malpractice alleged against unidentified Doe agents of the Regents. (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 450, p. 584; *Shusett, Inc. v. Home Sav. & Loan Assn.* (1964) 231 Cal.App.2d 146, 150 [41

Cal.Rptr. 622].) The Regents were entitled to rely on the scope of plaintiffs' operative pleading in seeking a summary disposition of the action.

Finally, our conclusion would be the same even if we considered plaintiffs' supplemental expert declaration. The proffered supplemental declaration offers no additional explanation or analysis, but merely provides more specific page citations to the medical records Dr. Ostergard reviewed in forming his opinions. Summary judgment was properly entered in favor of the Regents.

## DISPOSITION

The judgment dated June 14, 2010, in favor of the Regents is affirmed. The Regents shall recover their costs on appeal. The judgment dated June 23, 2010, in favor of Dr. Warren is reversed and the action is remanded for further proceedings. Plaintiffs shall recover their costs on appeal solely with respect to their appeal of the judgment entered in favor of Dr. Warren.

Bigelow, P. J., and Flier, J., concurred.