Filed 9/14/21  Gray v. Ocwen Loan Servicing CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| WEDA GRAY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br> OCWEN LOAN SERVICING, LLC, et al.,<br><br>    Defendants and Respondents. | D078847<br><br><br>(Super. Ct. No. 17CV305240) |

APPEAL from a judgment of the Superior Court of Santa Clara, James Stoelker, Judge.  (Retired Judge of the Santa Clara Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Law Offices of Charles T. Marshall and Charles T. Marshall for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton and Elizabeth C. Farrell for Defendants and Respondents.


INTRODUCTION

Weda Gray appeals from a summary judgment in favor of defendants and respondents Western Progressive, LLC (Western Progressive); U.S.

Bank, National Association (U.S. Bank), as Trustee for 2005 Structured Asset Securities Corporation, Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates Series 2005-HE1 (the Structured Asset Trust); and Ocwen Loan Servicing, LLC (Ocwen) (collectively, Defendants).

Gray defaulted on a mortgage loan, Western Progressive recorded a notice of default and an election to sell under the associated deed of trust, and Gray sued to stop the foreclosure. She alleged her loan, note and deed of trust were void, primarily on the ground that the loan had been "table funded" by an entity other than the lender named in her note and deed of trust. The trial court concluded Gray's claims were not supported by legal authority or admissible evidence and granted summary judgment in favor of Defendants.

On appeal, Gray asserts the trial court took too narrow a view of her claims and erred by granting summary judgment. We find no error in the trial court's ruling and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Loan and Subsequent Default*

In February 2005, Gray executed an Adjustable Rate note (note) payable to Finance America, LLC (Finance America) to obtain a $538,000 mortgage loan on a single family home in Milpitas, California. She also executed a deed of trust encumbering the property, and it was recorded with the Santa Clara County Recorder. The note and deed of trust name Finance America as the "Lender," and the deed of trust names Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and as nominee for the Lender and the Lender's successors and assigns.

2

The deed of trust was later assigned to U.S. Bank "as Trustee by Barclays Capital Real Estate, Inc. dba HomEq Servicing, attorney in fact." The assignment was signed by the assistant secretary of MERS, as nominee for Finance America, and was recorded in February 2009. In March 2010, a second assignment was recorded, assigning the deed of trust to U.S. Bank as trustee of the Structured Asset Trust. The second assignment was signed by the assistant secretary of U.S. Bank "as Trustee by Barclays Capital Real Estate Inc., DBA HomEq Servicing Its Atty in Fact." (Original in all capitals.)

According to Ocwen, HomeEq Servicing (HomeEq) was the original servicer of the loan and received the original loan documents from Deutsche Bank National Trust Company, the custodian for the Structured Asset Trust. In September 2010, Ocwen acquired HomeEq's loan servicing business, including the servicing of Gray's mortgage loan. Before the acquisition, HomeEq sent Gray a notice of service transfer letter, which included information about the changes to the servicing of her loan.

In 2013, Gray began missing payments and, in June 2014, Ocwen notified her of the default in a letter sent by certified mail with return receipt requested. Ocwen sent two more letters in September and October 2014 and attempted to call Gray on at least three separate days in October. Finally, in November, Ocwen sent Gray another notice by certified mail with return receipt requested, indicating Ocwen would foreclose on Gray's property if she did not contact them and the delinquency remained in 30 days.

In April 2015, Ocwen recorded a substitution of trustee, naming Western Progressive as the new trustee of the deed of trust. The substitution was signed by the contract management coordinator for U.S. Bank as trustee under the Structured Asset Trust, by its servicer Ocwen.

3

On May 11, 2015, approximately two years after Gray's first missed payment, Western Progressive recorded the notice of default on behalf of Ocwen. The notice of default informed Gray that she should contact Western Progressive "to arrange for payment to stop the foreclosure," and that Western Progressive was the current trustee under the deed of trust executed by Gray on February 18, 2005. It also included a "California Declaration of Compliance" in accordance with Civil Code section 2923.55, subdivision (c).[1] The declaration was signed by a contract manager for Ocwen, as servicer for U.S. Bank, as trustee under the Structured Asset Trust.

As of January 2017, Ocwen had physical possession of the original note. Several undated allonges attached to the note show assignments from Finance America to Lehman Brothers Holdings, Inc. (Lehman); from Lehman to U.S. Bank, as trustee; and from U.S. Bank, as trustee to U.S. Bank, as trustee under the Structured Asset Trust.

II.

*Gray's Complaint*

Gray sued Defendants to stop the foreclosure in January 2017. In a verified complaint, Gray alleged the note and deed of trust were not valid legal documents because Defendants concealed the true parties and nature of the loan. Alternatively, she alleged Defendants had not perfected a legal interest in the note and deed of trust and thus had no legal right to collect the debt.

---

[1] Civil Code section 2923.55 is part of the California Homeowner Bill of Rights and sets forth certain requirements a mortgage servicer must comply with before recording a notice of default. Subdivision (c) requires the mortgage servicer to include a declaration with the notice of default indicating the mortgage servicer contacted, or tried with due diligence to contact, the borrower. (Civ. Code, § 2923.55, subd. (c).)

4

More specifically, Gray alleged that the loan was "table funded" because Finance America was listed as the lender but Lehman actually funded the loan, and that Finance America and Lehman materially misrepresented the true parties to the note and deed of trust. She also alleged the note and deed of trust were void because the note is not a negotiable instrument and is instead payable only to Finance America, the California Department of Business Oversight revoked Finance America's business license in June 2006, and MERS exited the chain of title once the note was sold into the Structured Asset Trust.

Based on these allegations, Gray asserted the following nine causes of action against Defendants: (1) invalidity of contracts; (2) cancellation of instruments; (3) slander of title;[2] (4) violation of California Civil Code section 2924.17; (5) intentional misrepresentation; (6) wrongful foreclosure; (7) declaratory relief; (8) violation of Civil Code section 2923.55; and (9) violation of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200).

In the prayer for relief, Gray requested a declaration of the rights and duties of the parties with respect to the note, deed of trust, and assignments, an order cancelling these instruments, and an injunction enjoining Defendants from taking any further action based on the note or deed of trust.

---

[2] The trial court sustained a demurrer as to the third cause of action for slander of title, with leave to amend, before Defendants filed their motion for summary judgment. Gray did not amend, and she does not challenge the order sustaining the demurrer. Accordingly, the third cause of action is not at issue on appeal.

## III.

### *Defendants' Motion for Summary Judgment*

Defendants filed a motion for summary judgment or, in the alternative, summary adjudication of each cause of action. They asserted that numerous courts have rejected Gray's primary legal theory that the loan was void due to table funding and, alternatively, that Gray had no admissible evidence to support the theory. Defendants further asserted the undisputed evidence established the note, deed of trust, and all associated instruments were valid, and they had complied with all statutory requirements before commencing the foreclosure.

Defendants submitted the following documents in support of their motion: a separate statement of undisputed material facts; an attorney declaration attaching verified discovery responses and transcripts from the depositions of Gray and her daughter, Gina Gray, who also served as her mortgage broker for the loan; and a declaration from Howard R. Handville, a senior loan analyst with Ocwen Financial Corporation, the parent company of Ocwen. Handville's declaration set forth the details of the loan origination and subsequent transfers and attached copies of the note, deed of trust, assignments, substitution of trustee, and notice of default (collectively, the loan documents). In a separate pleading, Defendants asked the trial court to take judicial notice of the loan documents.

Gray opposed the motion, the separate statement of undisputed material facts, and the request for judicial notice. Gray provided an attorney declaration but did not include any attachments or provide any further evidence. Instead, her opposition relied primarily on transcripts of her own deposition testimony and the deposition testimony of her daughter, portions of which had already been submitted by Defendants.

6

After reviewing the pleadings and hearing argument, the trial court granted the request for judicial notice and the motion for summary judgment. A judgment of dismissal was entered on January 22, 2019. Gray timely appealed.

## DISCUSSION

### I.

*Relevant Legal Principles and Standard of Review*

Summary judgment is appropriate when the moving party establishes there is no triable issue of material fact under the pleadings and the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to make a factual finding that is necessary under the pleadings in favor of the party opposing the motion. (*Id.* at pp. 843, 850.)

A defendant moving for summary judgment has the initial burden of presenting evidence sufficient to establish the plaintiff either cannot prove at least one element of, or that there is a complete defense to, each cause of action as alleged in the complaint. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at pp. 850, 853; *Hutton v. Fidelity Nat. Title Co.* (2013) 213 Cal.App.4th 486, 493 (*Hutton*) ["the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings."].)

If the defendant does so, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 850.) The plaintiff may not rely on the allegations in the pleadings and, instead, must " 'set forth

7

the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' " (*Aguilar,* at p. 849; Code Civ. Proc., § 437c, subds. (p)(1) & (2).)  At the same time, though, the court may not weigh the evidence and must deny the motion if the evidence presented by the opposing party, or any inferences reasonably drawn therefrom, raises a triable issue of material fact.  (*Aguilar,* at p. 856.)

On appeal from a summary judgment, we apply the same legal standard used by the trial court and independently assess the correctness of the trial court's ruling.  (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 231; *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 326.)  "[W]e examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  However, " '[a]s with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)

II.

*The Trial Court Did Not Err by Granting Summary Judgment*

Gray contends the trial court erred by granting summary judgment on the first, second, fourth, fifth, and eighth causes of action.[3] We independently review the trial court's ruling with respect to each cause of action, and conclude summary judgment was appropriate.

A. *First Cause of Action: Invalidity of Contracts*

In support of her first cause of action for invalidity of contracts, Gray alleged "the [n]ote and [d]eed of [t]rust were formed from the unfair and deceptive business practice of table funding," and Finance America concealed the fact that it was not the true lender and was, instead, acting as an intermediary for Lehman. The transaction and Finance America, she alleged, violated several provisions of the Business and Professions Code, the Civil Code, and the Financial Code, and, as a result, the note and deed of trust are void "ab initio." Finally, she alleged there was no true meeting of the minds and no formation of a legally enforceable contract because Finance America and Lehman always intended to convert the note into a security, which included third parties and terms and conditions not disclosed in the note or deed of trust.

In the motion for summary judgment, Defendants argued there was no legal authority to support the theory that any of the loan documents were void as a result of table funding and, in any event, Gray presented no admissible factual basis for her assertion that Finance America was not the

---

3    Gray does not contest the grant of summary judgment on the sixth cause of action for wrongful foreclosure, the seventh cause of action for declaratory relief, and the ninth cause of action for a UCL violation in her briefing on appeal. (See *Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1410 [issues not raised in the opening brief are waived].)

9

true lender. The trial court ruled that, while it did not appear Gray was currently in possession of evidence demonstrating Finance America was not the true lender, Defendants had not met their burden to demonstrate Gray could not reasonably obtain such evidence. However, the court agreed with Defendants' first point and concluded, "table-funding is not a recognized basis upon which to challenge the [n]ote and [deed of trust]," and, therefore, Gray could not, "as a matter of law, succeed on her first cause of action, which is predicated on the table funding theory."

On appeal, Gray asserts the trial court erred by taking too narrow a view of her claims as "attacks on the practice of table funding a loan" and by concluding that she provided no evidentiary support for her assertion that Finance America was not the actual lender. We are not persuaded by either argument.

1. *Table Funding*

We turn first to Gray's assertion the trial court adopted an "incorrect, cramped definition of the dispute as one primarily relating to the illegal table funding of the loan."

"Table funding occurs when a transaction is consummated with the debt obligation initially payable by its terms to one person, but another person provides the funds for the transaction at consummation and receives an immediate assignment of the note, loan contract, or other evidence of the debt obligation." (*Compass Bank v. Petersen* (C.D. Cal. 2012) 886 F.Supp.2d 1186, 1191, fn. 5 (*Petersen*).) In other words, "the originator closes the loan in its own name, but is acting as an intermediary for the true lender, which assumes the financial risk of the transaction." (*Easter v. American West Fin.* (9th Cir. 2004) 381 F.3d 948, 955 (*Easter*).)

10

Here, Gray alleged in the first substantive paragraph under the first cause of action of her complaint that "the [n]ote and [d]eed of [t]rust were formed from the unfair and deceptive business practice of table funding." Gray went on in her complaint to explain her theory that Finance America was not the true lender, and instead acted as an intermediary for Lehman, who, in turn, intended to convert the loan into a security by transferring it to the Structured Asset Trust. This is, by definition, a table funding theory. Gray then asserted throughout the complaint, and in opposition to the motion for summary judgment, that Finance America was not the true lender of the loan. But the only basis set forth in the complaint for that assertion is the table funding theory. Thus, framing the issues by the pleadings, as we are required to, we agree the first cause of action is based primarily on a table funding theory. (See *Hutton, supra*, 213 Cal.App.4th at p. 493; *Easter, supra,* 381 F.3d at p. 955; *Petersen, supra,* 886 F.Supp.2d at p. 1191.)

As the trial court concluded, there is no authority under California law to void a note or deed of trust based on table funding. (*Grieves v. MTC Financial Inc.* (N.D. Cal., July 25, 2017, No. 17–CV–01981–LHK) 2017 WL 3142179, at p. *12, fn. 1 [addressing several California statutes and concluding none render a table-funded loan void]; *Palmer v. MTC Financial, Inc.* (E.D. Cal., May 26, 2017, No. 1:17–cv–00043–DAD–SKO) 2017 WL 2311680, at pp. *4-5 ; *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939 (*Yvanova*) [concluding that borrowers do not have standing to challenge assignments that are merely "voidable"]; and *Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 815 (*Mendoza)* ["Two post-*Yvanova* California appellate courts, in published opinions, have embraced the emerging consensus that assignments, which allegedly violate [pooling and service agreements] and federal law are voidable rather than

11

void, and as a result, borrowers do not have standing to challenge late transfers or other defects in the securitization process."].)  Gray simply ignored Defendants' argument that the table funding theory does not provide a legal basis to void the note or deed of trust in her opposition to the motion for summary judgment.  On appeal, she similarly fails to provide any legal authority to support her position that the note or deed of trust is void.

Even if we were to look beyond Gray's table funding theory, our review of the first cause of action reveals no basis to void any of the loan documents.  Gray alleged "the transaction violated Business and Professions Code Section 10176(a), (b), and (c); Civil Code Sections 2295 et seq. and 2923.1; and Financial Code Sections 4979.5, 4995(c) and (d) and 4995.3(c))."  Business and Professions Code section 10176 addresses grounds for suspending or revoking a real estate license; Civil Code sections 2295 et seq. and 2923.1 define agency and the fiduciary duties of a mortgage broker; Financial Code section 4979.5 provides that a person who provides brokerage services is the fiduciary of the consumer; and Financial Code sections 4995 and 4995.3 relate to enforcement of mortgage broker licenses.  None of these statutes provide a basis to void any of the loan documents, and Gray does not provide any legal authority suggesting they do.

Gray further alleged that the note and deed of trust are void and unenforceable pursuant to Civil Code section 3391, subdivision (3) or, alternatively, that a legal contract was not formed in the first instance because there was no true meeting of the minds.  Civil Code section 3391, subdivision (3) states specific performance cannot be enforced against a party to a contract if assent was obtained by misrepresentation, concealment, or unfair practices.  The only concealment or unfair practices alleged by Gray are based specifically on the table funding theory and, as we have already

12

discussed, table funding does not provide a basis to void a note or deed of trust. Similarly, as pled, the argument that there was no meeting of the minds derives from the assertion that Lehman always intended to convert the loan into securitization, but did not disclose that fact to Gray. But there is no legal basis to void the note or deed of trust on that theory either. (See *Yvanova, supra,* 62 Cal.4th at p. 927 ["A promissory note is a negotiable instrument the lender may sell without notice to the borrower" and "a borrower can generally raise no objection to assignment of the note [or] deed of trust."]; *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 43 (*Kalnoki*) ["any alleged irregularities in the securitization process are merely voidable at the securitized trust beneficiary's behest"].)

In her briefing on appeal, Gray asserts she presented evidence that the pooling and service agreement governing the Structured Asset Trust identified a series of intended transfers that do not match the recorded assignments and MERS did not have an agency agreement with Finance America at the time of the first assignment. These allegations do not appear in the first cause of action in the complaint and Gray does not provide a copy of the agreement. Regardless, the allegations do not provide a basis to void any of the loan documents. Gray provides no authority that the assignments must match any intended transfers identified in the pooling and service agreement and, in any event, irregularities in the securitization process do not render any of the loan documents void. (See *Kalnoki, supra,* 8 Cal.App.5th at p. 43 ["any alleged irregularities in the securitization process are merely voidable at the securitized trust beneficiary's behest"].) Similarly, Gray does not provide any factual basis for the assertion that MERS did not

13

have an agency agreement with Finance America, nor does she explain how the lack of an agency agreement impacts the validity of the assignment.

We conclude, as did the trial court, that Gray's first cause of action for invalidity of contracts fails as a matter of law.

2.      *"No Evidence" Theory of Summary Judgment*

Gray also asserts the trial court erred in concluding that she provided no evidentiary support for her assertion that Finance America was not the actual lender, despite finding that Defendants could not prevail on a "no evidence" theory of summary judgment with respect to the first cause of action. Although we have already concluded the first cause of action fails as a matter of law, we address this additional argument because the evidentiary issue is relevant to our analysis of the remaining causes of action and the summary judgment as a whole.

A defendant may prevail on summary judgment by presenting evidence establishing the plaintiff does not possess, and cannot reasonably obtain, evidence necessary to support an asserted claim. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 889–890 (*Gaggero*); *Aguilar, supra,* 25 Cal.4th at pp. 854– 855.) However, simply pointing out that the plaintiff does not currently have sufficient evidence to support a claim is not enough; the defendant must also prove the plaintiff cannot reasonably obtain the necessary evidence. (*Gaggero, supra,* at p. 891; *Aguilar, supra*, at p. 854, fn. 23.)

Here, the trial court found Defendants failed to establish that Gray could not reasonably obtain evidence to support her assertion that Finance America was not the true lender. We agree. As just one example, Gray contends the pooling and service agreement supports her claim but she has not provided a copy of the agreement and instead relies solely on her and her daughter's testimony to support this assertion. However, Defendants also

14

have not provided a copy of the agreement or any other evidence to refute Gray's assertions regarding its contents.  Defendants have not offered evidence sufficient to prove Gray cannot reasonably obtain admissible evidence to support the allegation that Finance America is not the true lender and, therefore, cannot prevail based solely on a "no evidence" theory of summary judgment.  (See *Gaggero, supra,* 108 Cal.App.4th at p. 891.)

However, Defendants have provided other evidence sufficient to establish that Finance America *was* the original lender, namely a declaration from Ocwen that provided validated copies of the executed note, deed of trust, and subsequent allonges and assignments.  The note and deed of trust— notarized and recorded legal instruments that Gray personally signed— identified Finance America as the lender.  As a result, the burden shifted to Gray to establish the existence of a material issue of fact as to whether Finance America was, in fact, the true lender.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 850.)  Gray has not met that burden.

As she did in her opposition to the summary judgment in the trial court, Gray fails to provide citations to support many of her contentions on appeal and, when she does, her citations are mostly to her own deposition testimony and the deposition testimony of her daughter.[4]  As the trial court noted, the deposition testimony Gray relies upon is pure speculation, which is insufficient to establish a triable issue of material fact.  (See *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 (*Sangster*) ["plaintiff must produce

---

[4]    In her opposition to Defendants' separate statement of undisputed facts, Gray also cites to various discovery responses submitted by Ocwen. Those discovery responses are not in the record before us and the record we do have suggests they were not before the trial court either.  (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 599 ["We do not consider evidence that is not in the record in reviewing a motion for summary judgment."].)

15

substantial responsive evidence sufficient to establish a triable issue of material fact on the merits of the defendant's showing"]; *Aguilar, supra,* 25 Cal.4th at p. 864 ["Speculation, however, is not evidence."]; *Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 508 (*Shugart*) [wholly conclusory statements are insufficient to raise a triable issue].)

At her own deposition, Gray conceded she does not have facts to support the assertion that Lehman actually funded the loan and does not know who funded it. Her daughter, who also served as her mortgage broker for the loan, opined that it appeared Finance America was trying to assign the note to Lehman, but Lehman was in bankruptcy, so they assigned the note to U.S. Bank. However, she conceded her opinion was based on her review of the note and allonges and she, too, had no evidence, beyond the loan documents themselves, that Finance America was not the original lender.

The conclusory, unsupported testimony Gray presented was not sufficient to rebut the evidence presented by Defendants or to create a triable issue of material fact as to whether Finance America was actually the original lender. (See *Sangster, supra,* 68 Cal.App.4th at p. 163; *Aguilar, supra,* 25 Cal.4th at p. 864; *Shugart, supra,* 199 Cal.App.4th at p. 508.) Accordingly, the trial court correctly concluded both that Defendants could not prevail on a "no evidence" argument for summary judgment, and that Gray had not presented sufficient evidence to rebut the evidence submitted by Defendants or to establish a triable issue of material fact.

B.     *Second Cause of Action:  Cancellation of Instruments*

In support of her second cause of action for cancellation of instruments, Gray alleged the deed of trust, assignments, and notice of default are void for essentially the same reasons set forth in the first cause of action, including that Finance America "was prohibited from identifying itself as Lender; and

16

the Deed of Trust was the result of the unfair and deceptive business practice of table funding."

As with the first cause of action, Gray contends the trial court erred by framing the issue too narrowly as stemming solely from a table funding theory. To the contrary, in its ruling on the second cause of action, the trial court identified and individually addressed several arguments regarding the validity of the deed of trust, both assignments, and the notice of default before concluding Gray had not established any basis to cancel any of those instruments. We find no error in the trial court's analysis.

In her briefing on appeal, Gray focuses on her allegations regarding MERS. She asserts the trial court incorrectly framed the issue as whether MERS's role in the assignments or securitization process resulted in a broken chain of title. In fact, the trial court identified three bases alleged under the second cause of action for cancelling the first assignment: "(1) the [deed of trust] is void (due to table funding)[;] (2) the assignment was signed by an employee at Barclays (dba HomeEq, the initial servicer) rather than MERS[;] and (3) MERS 'exited' the chain of title when the Loan was sold to Lehman and [Finance America's] business license was revoked in June 2006."

The issues identified by the trial court are consistent with Gray's complaint. She specifically alleged Lehman sold the debt to the Structured Asset Securities Corporation,[5] which held no agency with MERS, and MERS "exited the chain of title at that time." Incorporating that allegation by reference, Gray asserted in the second cause of action that the first assignment is invalid because "MERS held no agency," "Barclays was without

---

[5] The allonges to the note and the assignments to the deed of trust state the loan was transferred to U.S. Bank, as trustee of the Secured Asset Trust, and not to Structured Asset Securities Corporation.

17

right or authority to execute the [assignment] as MERS," and "MERS held no capacity to contract."

After reiterating that any alleged table funding does not void the deed of trust, the trial court found there was no authority that precluded MERS from designating an employee at the loan servicer to sign documents on its behalf. It then rejected the theory that MERS lacked the authority to execute the assignment, in part because "the [deed of trust] expressly appoints MERS as nominee for [Finance America] *and its successors and assigns*." We agree. (See *Ratliff v. JPMorgan Chase Bank N.A.* (N.D.Cal., July 6, 2017, No. 17–cv–02155–EMC) 2017 WL 2876141 at p. *8 [rejecting claim that MERS had no authority to act where "[t]he [deed of trust] contemplates MERS acting as nominee 'for Lender *and* Lender's successors and assigns.' "].)

In her opposition to the motion for summary judgment, Gray relied on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*), to assert "that a borrower has standing to challenge a foreclosure based [on] assignments that were allegedly rendered void for having occurred after the securitized trust's closing date in violation of the trust's pooling and service agreement." But, as the trial court noted, *Glaski* is an outlier and has been rejected by numerous courts on this particular point. (*Mendoza, supra,* 6 Cal.App.5th at pp. 811–819 ["In spite of this mountain of authority against her position, plaintiff continues to insist she has standing. To adopt her position, we would have to reject all of the New York, California, and federal cases cited above and adopt the discredited *Glaski* interpretation of New York law, an interpretation expressly rejected by the appellate courts in New York."]; see also *Kalnoki, supra,* 8 Cal.App.5th at p. 43 ["We decline to follow *Glaski* and instead conclude that an assignment to a securitized trust made after the trust's closing date is merely voidable."].)

18

Gray now asserts she presented evidence of MERS's role to show the loan documents were fabricated and as evidence of "MERS's principal's lack of authority." First, as we have already discussed, Defendants provided, and the trial court took judicial notice of, copies of all of the loan documents, each of which was signed, notarized, and/or recorded. By contrast, Gray's assertion that one or more of those documents was somehow fabricated is pure speculation, unsupported by any admissible evidence and, thus, insufficient to raise a triable issue of material fact. (See *Sangster, supra,* 68 Cal.App.4th at p. 163; *Aguilar, supra,* 25 Cal.4th at p. 864; *Shugart, supra,* 199 Cal.App.4th at p. 508.) Thus, Gray presented no admissible factual basis for her assertion that any of those documents were fabricated. Second, Gray does not explain what she means by "MERS's principal's lack of authority" or how the trial court's framing of the issues and associated ruling fails to address any alleged lack of authority. The trial court provided a multi-pronged analysis with respect to the role of MERS, and we find no error in the court's ruling.

Finally, Gray contends she submitted evidence that went beyond the role of MERS, including "evidence of Defendants' misstatements regarding the entirety of the loan and its funding, its servicing, and the transfers of interest and authority, including forgery in the indorsements and executions of crucial documents required by the contracts themselves, and California's foreclosure statute." The only citation Gray provides to support this assertion is to her response to Defendants' separate statement of undisputed facts. And in that response, Gray relies primarily on her own deposition testimony, the deposition testimony of her daughter, and her own discovery responses. Again, none of this is sufficient to raise a triable issue of material fact regarding the authenticity of any of the documents submitted by

19

Defendants. (See *Sangster, supra,* 68 Cal.App.4th at p. 163; *Aguilar, supra,* 25 Cal.4th at p. 864; *Shugart, supra,* 199 Cal.App.4th at p. 508.) Moreover, Gray provides no legal authority indicating her allegations, even if taken as true, would support the cancellation of any of the loan documents.

We conclude the trial court did not err in granting summary judgment as to the second cause of action for cancellation of instruments.

C.     *Fourth Cause of Action: Violation of Civil Code Section 2924.17*

The fourth cause of action is for violation of Civil Code section 2924.17, which is part of the California Homeowner Bill of Rights and provides that a notice of default, and certain other documents, recorded by a mortgage servicer in connection with a foreclosure must be accurate and complete and supported by competent and reliable evidence. (Civil Code § 2924.17, subd. (a).) In addition, the mortgage servicer must ensure it has reviewed the competent and reliable evidence and substantiated a right to foreclose. (*Id.,* subd. (b).) Finally, the statute provides that any mortgage servicer that engages in repeated violations of the statute may be subject to a civil penalty of up to $7,500 per violation, in addition to other remedies available to certain identified government entities. (*Id.,* subd. (c).) Civil Code section 2924.12 permits a borrower to bring an action for injunctive relief to enjoin violations of certain sections of the Homeowner Bill of Rights, including section 2924.17.

In support of her fourth cause of action, Gray alleged Defendants violated Civil Code section 2924.17 by failing to ensure the assignments and notice of default were complete and supported by admissible, reliable evidence, and that Gray is entitled to injunctive relief pursuant to Civil Code section 2924.12. However, Gray provided no details as to why those documents were not accurate or supported by competent and reliable

20

evidence, and instead appears to have relied primarily upon the same allegations underlying the failed first and second causes of action.

Defendants asserted, and the trial court agreed, that Civil Code section 2924.17 was not applicable to the note, deed of trust, or associated assignments because the Homeowner Bill of Rights does not apply to documents executed before January 1, 2013. Regarding the notice of default, which was recorded in 2015, the trial court explained the statute does not require the foreclosing entity to demonstrate a right to foreclose and does not create a right to litigate. Instead, Civil Code section 2924.17 requires only that the foreclosing entity conduct its own review of evidence to verify it has a right to foreclose, and that the declaration included with the Notice of Default (pursuant to Civil Code section 2923.55 regarding contact with the homeowner) must be " 'accurate and complete and supported by competent and reliable evidence.' " (Civil Code § 2924.17, subd. (a); *Lucioni v. Bank of America N.A.* (2016) 3 Cal.App.5th 150, 162–163 (*Lucioni*).) Here, as the court found, Defendants submitted evidence they complied with the statutory requirements and the notice of default contained the required declaration.

On appeal, Gray concedes the Homeowner Bill of Rights does not apply to documents executed before January 1, 2013. But she asserts the statute does apply to the 2015 substitution of trustee, the notice of default, and the notice of trustee's sale, and argues Ocwen failed to review competent and reliable evidence before filing those documents. Again, Gray provides no citation to the record or any legal authority supporting her assertion and, specifically, no argument or authority disputing the trial court's analysis regarding the requirements of Civil Code section 2924.17. We find no error in the court's analysis. (See *Lucioni, supra,* 3 Cal.App.5th at pp. 161–163 [holding Civil Code "section 2924.17 does not impose a preforeclosure duty on

21

foreclosing entities to demonstrate that they have a right to foreclose" and does not "create a right to litigate, preforeclosure, whether the foreclosing party's conclusion that it had the right to foreclose was *correct*"].)

Moreover, for the same reasons we have already discussed, Gray has not provided any evidence to establish a triable issue regarding the accuracy of any of the loan documents. Gray's assertion that Ocwen failed to review competent and reliable evidence is, similarly, based on pure speculation insufficient to establish a triable issue of material fact as to the fourth cause of action. (See *Sangster, supra,* 68 Cal.App.4th at p. 163; *Aguilar, supra,* 25 Cal.4th at p. 864; *Shugart, supra,* 199 Cal.App.4th at p. 508.)

We find no error in the trial court's ruling on summary judgment with respect to the fourth cause of action for a violation of Civil Code section 2924.17.

D.     *Fifth Cause of Action:  Intentional Misrepresentation*

The fifth cause of action is for intentional misrepresentation and is asserted only against U.S. Bank and Western Progressive. "The elements of a cause of action for intentional misrepresentation are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage." (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1166.) A cause of action for intentional misrepresentation sounds in fraud and, thus, must be pled with specificity. (*Ibid.*)

Here, the alleged misrepresentations identified by Gray are based primarily upon the alleged inaccuracies in the various loan documents. Specifically, Gray alleged Defendants knowingly made false statements in connection with the deed of trust, assignments, and notice of default, and

22

intended for Gray to rely on them as recorded instruments. The trial court concluded the fifth cause of action was based on Gray's previous contentions regarding the funding of the loan, and failed because Defendants had provided evidence to refute Gray's assertions regarding the accuracy of the loan documents.

Gray once again contends the trial court erred by narrowly defining the dispute as related solely to table funding. As discussed, though, the trial court adequately addressed Gray's arguments with respect to the validity of the loan documents throughout the summary judgment ruling and, specifically, with respect to the second cause of action. As the fifth cause of action was premised on the same allegations regarding the accuracy of the loan documents, we agree with the trial court that it also fails for all the same reasons.

In addition, the trial court also concluded Gray failed to allege the existence of a triable issue as to damages. As she did below, Gray claims she was harmed by the misrepresentations because she paid the wrong party "hundreds of thousands of dollars." However, this assertion is once again premised on the allegation that Finance America was not the true lender. As we have already said, table funding is not a valid theory upon which to void any of the loan documents and Gray has not provided any evidence beyond mere speculation to rebut Defendants' evidence establishing the validity of those documents. Indeed, Gray continues to rely solely upon her opposition to Defendants' undisputed statement of material facts which, in turn, relies primarily on her and her daughter's conclusory and speculative deposition testimony.

Regardless, even if we accept the table funding theory as true, Gray does not allege the payments she did make were not recorded against the

23

loan and does not otherwise explain how she was harmed by making payments to Ocwen, as servicer for U.S. Bank, instead of Finance America. As a result, she has not adequately pled that she was damaged as a result of the alleged intentional misrepresentation.

The trial court did not err by granting summary judgment with respect to the fifth cause of action for intentional misrepresentation.

E.   *Eighth Cause of Action:  Failure to Comply with Civil Code Section 2923.55*

The eighth and final cause of action at issue in this appeal is for failure to comply with Civil Code section 2923.55.  Civil Code section 2923.55, also part of the Homeowner Bill of Rights, sets forth a number of requirements a mortgage servicer must comply with before recording a notice of default. (Civ. Code, § 2923.55, subd. (a).)  Of relevance here, the mortgage servicer must provide certain information to the borrower in writing and must contact the borrower in person or by telephone to explore options for the borrower to avoid foreclosure.  (*Id.*, subds. (b)(1) & (2).)

In support of this cause of action, Gray alleged Defendants never sent her any notice or statement as required under the statute.  However, the declaration from Handville, a senior loan analyst responsible for researching and reviewing loans serviced by Ocwen, explained Ocwen's document retention practices and provided copies of several letters sent to Gray, the notice of default with the requisite declaration attached, and a copy of the servicing notes indicating Ocwen attempted to call Gray on three occasions in October 2014.  Gray asserts the "false [notice of default] is not admissible to meet Defendants' burden to show that such contact was in fact made," but she does not address or present any evidence to rebut the relevant statements made in Handville's declaration.

24

Gray relies on *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117 (*Poseidon*) and *Herrera v. Deutsche Bank Nat. Trust Co.* (2011) 196 Cal.App.4th 1366, 1375 (*Herrera*), where the appellate court placed limits on the trial court's ability to take judicial notice of factual matters stated within a judicially noticed document, such as a deed of trust. But neither case is instructive here. There was no supporting declaration at issue in *Poseidon* and, although there was a declaration in *Herrera*, the court found it to be severely lacking in several respects. (*Poseidon, supra,* 152 Cal.App.4th at pp. 1117–1118; *Herrera, supra,* 196 Cal.App.4th at pp. 1375–1378.) Gray does not contend that Handville's declaration is similarly lacking, nor does she present any evidence to refute the statements contained in the declaration or to the attached records.

As with Gray's other contentions, the bald, unsupported assertion that Ocwen failed to contact her as required by Civil Code section 2923.55 is not sufficient to establish a triable issue of material fact in light of the evidence submitted by Defendants. (See *Sangster, supra,* 68 Cal.App.4th at p. 163; *Aguilar, supra,* 25 Cal.4th at p. 864; *Shugart, supra,* 199 Cal.App.4th at p. 508.)

The trial court did not err by granting summary judgment as to the eighth cause of action. And in sum, we conclude the trial court did not err by granting summary judgment in favor of Defendants.

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

DO, J.

WE CONCUR:

McCONNELL, P. J.

GUERRERO, J.