Filed 1/23/23 Tonti v. Naficy CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALISON TONTI,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>K. MITCHELL NAFICY,<br><br>    Defendant and Respondent. | G060814<br><br>(Super. Ct. No. 30-2019-01116243)<br><br>O P I N I O N |

Appeal from a judgment and orders of the Superior Court of Orange County, Theodore R. Howard, Judge. Affirmed in part, reversed in part, and remanded.

Medvei Law Group and Sebastian M. Medvei for Plaintiff and Appellant.

Peterson Bradford Burkwitz, Thomas Bradford and Gil Burkwitz for Defendant and Respondent.

\*          \*          \*

**INTRODUCTION**

This appeal arises from a judgment in favor of defendant Dr. K. Mitchell Naficy following orders sustaining demurrers and an order granting summary judgment. In December 2018, plaintiff Alison Tonti received substance abuse treatment at a residential detoxification facility operated by codefendant Capo By The Sea, Inc. (Capo). According to Tonti, she was not examined by Naficy prior to receiving a drug prescription given to ease her anticipated withdrawal symptoms. Tonti alleges that days later, she lost consciousness as a result of the drug and suffered a substance abuse relapse. Shortly thereafter, she withdrew from Capo and filed the underlying lawsuit against Naficy, Capo, and a Capo staff member, asserting three claims against Naficy.

Relevant to this appeal, Naficy filed successful demurrers against Tonti's claims for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.)[1] and willful misconduct. Naficy then filed a motion for summary judgment (MSJ) against Tonti's remaining medical malpractice claim. In support, Naficy submitted Tonti's medical records and a declaration of a proposed expert witness who presented opinions based on the records. In her opposition to the MSJ, Tonti asserted evidentiary objections to the records, arguing they were hearsay and not properly authenticated. The trial court overruled the objections and granted the MSJ.

Tonti asserts the trial court erroneously sustained Naficy's demurrers and incorrectly overruled her objections to the admissibility of her medical records. We conclude Tonti has shown one of the demurrers was erroneously sustained and agree her medical records lacked proper authentication to support Naficy's MSJ. We affirm the court's order sustaining Naficy's demurrer to Tonti's original complaint willful misconduct claim, reverse the court's order sustaining Naficy's demurrer to Tonti's amended complaint UCL claim, reverse the grant of summary judgment, and remand this matter for further proceedings.

---

[1]     All further undesignated statutory references are to the Business & Professions Code.

2

# FACTUAL BACKGROUND[2]

In December 2018, Tonti admitted herself to Capo to receive residential substance detoxification services for a fee of $10,000. A Capo staff member that Tonti has designated in her complaint as "Jeff Doe" drove Tonti there. Relevant to her claims against Naficy, Tonti asserts that upon arriving at Capo, she "did not meet with any doctors, and did not have any kind of examination by a licensed health care professional."

Tonti alleges that, notwithstanding the lack of an examination, she received prescriptions for medication treatments known as "taper[s]," which she explains are "designed to ease a [substance abuse disorder] patient through detoxification and into abstinence . . . by using medications to alleviate and control the severe pain from withdrawals associated with detoxification and abstinence."

Tonti asserts that after she complained about her first taper treatment, Doe called Naficy who, without examining Tonti, prescribed for the next treatment "a 30-day protocol of [b]enzodiazepine." Because she had no direct line of communication to Naficy, Tonti told Doe she "did not feel comfortable taking [the b]enzodiazopene as part of [her treatment] because her past experience with it had led to unfortunate side effects." Notwithstanding, Doe "required [Tonti] to continue with the [b]enzodiaz[e]p[i]ne protocol," according to her allegations.

After beginning the benzodiazepine taper, Tonti asserts she had an episode where she "blacked out" and during that time obtained heroin, relapsing into substance abuse. Tonti alleges she was transferred to a lower security location by Capo and unsuccessfully demanded to be returned to a residential facility. "[F]earing another relapse," she "cease[d] enrollment with" Capo and unsuccessfully demanded a refund.

---

[2]  The factual allegations discussed are limited to the issues material to our disposition of this appeal.

Tonti alleges that if Naficy had "conducted a non-negligent work up" that included "an inquiry into [Tonti]'s particular substance sensitivities . . . Naficy would have discovered that [Tonti] ha[d a] very low tolerance for [the Benzodiazepine] as it is outside the scope of the typical substances related to" Tonti's substance abuse disorder. She alleges the defendants "engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged." She seeks restitution of the $10,000 she paid to Capo, compensatory and punitive damages, and declarative as well as injunctive relief.

## PROCEDURAL HISTORY

In Tonti's original and amended complaint, she alleges six causes of action against various defendants: (1) professional negligence; (2) negligence; (3) "intentional conduct"; (4) breach of contract; (5) intentional misrepresentation; and (6) violation of the UCL. Only three of the claims were alleged against Naficy: professional negligence, "intentional conduct," and violation of the UCL.

Tonti's claims for "intentional conduct" and violation of the UCL were eliminated at the pleadings stage of litigation. Specifically, the trial court sustained Naficy's first demurrer against the two claims with leave to amend.

In her amended complaint, Tonti only reasserted professional negligence and violation of the UCL against Naficy, adding some factual specificity for the latter. Naficy filed a second demurrer, against the UCL claim, that the trial court sustained. Although leave to amend was again granted, Tonti failed to do so and proceeded against Naficy on the professional negligence claim only.

Five months later, in May 2021, Naficy filed an MSJ on Tonti's professional negligence claim. In support, he filed a declaration by proposed expert witness Dr. Darryl J. Ballin, who specialized in "addiction medicine." Ballin presented opinions supporting Naficy's positions on the applicable standard of care, causation, and

4

damages claimed, including his opinion that the taper prescription Tonti relies on did not cause the "'black out'" episode she claims to have suffered. The opinions were based on Naficy's presentation of Tonti's medical records purportedly documenting her treatments received through Naficy's practice and Capo which had been filed in the trial court. Naficy presented defense discovery verifications as the foundations for the records.

Tonti's opposition to the MSJ included written evidentiary objections to Ballin's declaration as well as hearsay and foundation objections to the presented medical records. The trial court overruled Tonti's objections, citing Evidence Code section 720 and *Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499 (*Shugart*). The court granted Naficy's MSJ and entered judgment. Tonti timely appealed.

## DISCUSSION

As noted, Tonti challenges the trial court's rulings on Naficy's demurrers and the MSJ. We first review the MSJ rulings, then Tonti's challenges to the demurrer rulings.

### I.   THE MOTION FOR SUMMARY JUDGMENT

*A. Standard of Review*

We review a summary judgment motion ruling de novo for whether any triable issue of material fact exists. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) The moving party bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Only if the moving party carries this burden does it shift to the opposing party, to show a triable issue of material fact exists. (*Ibid.*) Because an MSJ grant implements a drastic result, we strictly construe the moving party's papers and evidence, with all doubts on the propriety of granting summary judgment resolved against the moving party. (*Hamburg v. Wal-Mart Stores, Inc.* (2004)

5

116 Cal.App.4th 497, 502 [papers]; *City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 886 [evidence].)

### B. *MSJ Expert Evidence Case Law*

As noted, Tonti's opposition to Naficy's MSJ included evidentiary objections to Ballin's declaration and the presentation of Tonti's medical records on which Ballin's opinions rested. Among the grounds were hearsay objections that shifted to Naficy the burden of establishing a foundation for a hearsay exception.

The parties correctly agree that without properly admitted medical records an expert witness's medical opinions based on those records have no evidentiary value. (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743 (*Garibay*) ["'Although experts may properly rely on hearsay in forming their opinions, they may not relate the out-of-court statements of another as independent proof of the fact'"].) Accordingly, the threshold issue for our review is whether the medical records were properly "placed before the [trial] court by the moving party." (*Shugart, supra*, 199 Cal.App.4th at p. 505.)

We review the trial court's overruling of Tonti's evidentiary objections for abuse of discretion. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.) Specifically, we "measure[] the evidence presented to the trial court against the range of options permitted by the established legal criteria. [Citation.] The scope of the trial court's discretion is limited by the governing law, and an action that "'transgresses the confines of the applicable principles of law'"' constitutes an abuse of discretion. [Citation.] [¶] The trial court's factual findings are reviewed under the substantial evidence standard while the trial court's legal conclusions are reviewed de novo. [Citation.]" (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789.) Generally, we affirm or reverse based on the correctness of the result and not its reasons. (See *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443.)

As noted, the trial court's ruling on the admissibility of the medical records included citations to Evidence Code section 720 and *Shugart, supra*, 199 Cal.App.4th at pages 506-507. At the outset, we note that Evidence Code section 720 does not bear on the admissibility of Tonti's medical records because that section is about expert qualifications and not the admissibility of materials an expert can rely on for presenting opinions.

We review *Shugart, supra*, 199 Cal.App.4th 499, for grounds on which the records were properly admitted. There, an employer of a doctor and another physician moved for summary judgment against claims of medical negligence asserted by plaintiffs, a patient and a spouse. The defendants submitted "properly authenticated" copies of the patient's medical records as well as declarations of experts who opined the physician's services met the standard of care and did not cause the injuries claimed. (*Id.* at pp. 503, 506.) In opposition, the plaintiffs submitted a declaration by their own expert challenging both points. (*Id.* at pp. 503-504; see *Cobbs v. Grant* (1972) 8 Cal.3d 229, 236 [unless "medical question resolvable by common knowledge," expert evidence required].)

The trial court granted the defendants' summary judgment motions. It concluded the declaration of the plaintiffs' expert lacked evidentiary value because the expert had failed to refer to or attach the materials he relied on to form his opinions and because the plaintiffs did not otherwise "separately set forth any of the medical history of" the patient plaintiff. (*Shugart, supra*, 199 Cal.App.4th at pp. 504-505.)

The appellate court reversed, holding the plaintiffs' expert's opinions had not lacked a proper foundation. (*Shugart, supra*, 199 Cal.App.4th at p. 505.) The appellate court pointed out the opinions relied in part on medical records that had already been properly authenticated as part of the defendant physician's moving papers. (*Id.* at pp. 505-506.) In other words, *Shugart's* driving rationale on the admissibility of MSJ

7

evidence is that there is no need for a party to properly authenticate medical records that have already been deemed so by the trial court. (*Id.* at p. 506.)

The *Shugart* court contrasted its evidentiary record from the record in *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735 (see *Shugart, supra*, 199 Cal.App.4th at pp. 505-506), a case on which Tonti relies in this appeal. The *Garibay* appellate court reversed a summary judgment granted in favor of a medical malpractice defendant. (*Garibay, supra*, 161 Cal.App.4th at pp. 743-744.) The "main issue on appeal [was] whether an expert medical witness's declaration, setting forth facts of the surgery performed on plaintiff Garibay based on the expert witness's review of hospital and medical records which were not properly before the court, was sufficient to meet the burden of the production of evidence required of the party moving for summary judgment." (*Id.* at p. 740.) The *Garibay* appellate court concluded the defense expert declaration was insufficient because the records had not been authenticated and therefore had been erroneously admitted. (*Id.* at pp. 741-743.)

## C. Tonti's Hearsay Objection Is Well Taken

In this case, in contrast to *Shugart*, Naficy does not claim any prior trial court ruling that found Tonti's medical records properly authenticated; nor do we discern any. Instead, this case is directly analogous to the threshold issue in *Garibay*: whether the moving party properly authenticated medical records to satisfy their initial burden of production to support their MSJ.

As in *Garibay*, we look to Evidence Code section 1271, known as the business records exception to the hearsay rule. It states: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity

8

and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

As noted, in this case, Ballin's expert declaration relied on two challenged medical records of Tonti regarding treatments received from Naficy's practice and Capo. The records were submitted with respective discovery response verifications by Naficy and the owner of Capo, verifying the defendants' responses to discovery requests for production of documents and things, as required by Code of Civil Procedure section 2031.250. Consistent with the requirements of that discovery statute, the verifications both assert that "[t]he matters stated in the foregoing documents are true of [the signatory's] own knowledge except as to those matters which are stated on information and belief, and as to those matters [they believe] to be true." Critically, there is no assertion in either verification specifying that their corresponding records were "made in the regular course of a business" or "at or near the time of the act, condition, or event" recorded, as required by the business records exception to the hearsay rule (Evid. Code, § 1271) and we do not infer these points (*City of Vista v. Robert Thomas Securities, Inc., supra*, 84 Cal.App.4th at p. 886 [moving party's evidence strictly construed]).

Naficy's appellate briefing does not discuss Evidence Code section 1271 or address Tonti's reliance on *Garibay*. None of his case law citations, bereft of discussion, address the hearsay objection at issue in *Garibay* and this appeal.

Based on the record and briefing, we conclude Tonti has met her burden to show the trial court erroneously admitted the medical records on which Naficy's expert based his opinions because there was an insufficient factual showing that an exception to the hearsay rule was satisfied. It follows that Naficy's "summary judgment motion failed to meet its burden of production, and thus did not shift that burden to [Tonti]." (*Garibay, supra*, 161 Cal.App.4th at p. 743.)

Accordingly, because Naficy as the party moving for summary judgment failed to meet his initial burden, summary judgment should not have been granted despite

9

Tonti's failure to present an expert declaration opposing Ballin's opinions on the merits. (See *Garibay, supra*, 161 Cal.App.4th at p. 741 ["'In professional malpractice cases, expert opinion testimony is required to prove or disprove that the defendant performed in accordance with the prevailing standard of care [citation], except in cases where the negligence is obvious to laymen. [Citation.]'"].) Given our conclusion, we need not consider the parties' other MSJ contentions.

II.   THE DEMURRER RULINGS

Next, Tonti contends the trial court erred in sustaining Naficy's demurrers to Tonti's third cause of action in her original complaint, for "intentional conduct," and sixth cause of action in her amended complaint, for violation of the UCL. Tonti asserts the third cause of action should have survived "[f]or the same reasons as the [UCL] claim," so we begin our review with the sixth cause of action.

A. *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) "[W]e give the complaint a reasonable interpretation" and, outside of issues not implicated here,[3] "we treat the demurrer as an admission by [the] defendant[] of all material facts properly pled in [the] plaintiff['s] complaint — but not logical inferences, contentions, or conclusions of fact or law." (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152.) "[W]hen a demurrer is sustained with leave to amend, but the plaintiff elects

---

[3]   Complaint allegations can be refuted by attached exhibits (*Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406 (*Nolte*).) and judicial notice (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6).

not to amend, it is presumed on appeal that the complaint states the strongest case possible." (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10 (*Ram*).)

"'[A]lthough we use a de novo standard of review . . . , we do not transform into a trial court . . . . Instead, the appellant must frame the issues for us, show us where the superior court erred, and provide us with the proper citations to the record and case law.'" (*Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 404 (*Crawley*); *Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 549 [The "[a]ppellant bears the burden of demonstrating that the trial court erred"].)

## B. UCL Principles

California's UCL provides limited civil remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200;[4] see *De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 993 [UCL is "broad in scope, . . . limited in remedies"].) Relevant to this appeal, the UCL's "unlawful" prong requires a prima facie showing of three essential elements: (1) specific unlawful conduct (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 676), (2) a business course of conduct (see *Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 653), and (3) that as a result the defendant obtained plaintiff's money or property (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322). "[T]he UCL '"borrows"' rules set out in other laws and makes violations of those rules independently actionable" (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 369), generally independent of whether the borrowed law otherwise allows a private cause of action (see *id.* at p. 369).

## C. The Demurrer to the UCL Claim Was Improperly Sustained

---

[4] All further undesignated statutory references are to the Business & Professions Code.

Tonti asserts in her appellate briefing that Naficy violated the corporate practice of medicine (§ 2400), Health and Safety Code sections 11150, 11154, 11217.5, and committed medical malpractice, including failing to obtain Tonti's informed consent. Tonti failed to assert some of the grounds in the trial court so her UCL claim can stand in this appeal based on theories of violating: (1) the corporate practice of medicine; (2) & (3) Health and Safety Code sections 11150 and 11154; and (4) a failure to obtain Tonti's informed consent. Because we conclude Tonti sufficiently alleged facts for the first theory, we do not reach conclusions about the remaining three theories.

"In general, under California's long-standing 'policy . . . against [the] corporate practice of the learned professions,' for-profit corporations 'may not engage in the practice of ... medicine.' [Citation.] The ban on the corporate practice of medicine generally precludes for-profit corporations — other than licensed medical corporations — from providing medical care through either salaried employees or independent contractors. [Citations.] . . . [T]he ban on the corporate practice of medicine 'is intended to ameliorate "the evils of divided loyalty and impaired confidence" which are thought to be created when a corporation solicits medical business from the general public and turns it over to a special group of doctors, who are thus under lay control. [Citation.]'" (*People v. Cole* (2006) 38 Cal.4th 964, 970-971 (*Cole*); see Physicians and Surgeons: Information Pertaining to the Practice of Medicine, Med. Bd. Cal., https://www.mbc.ca.gov/Licensing/Physicians-and-Surgeons/Practice-Information/ ["This section of the law is intended to prevent unlicensed persons from interfering with, or influencing, the physician's professional judgment"].)

Relevant here, the same Medical Practice Act that enacted section 2400 in 1980, also enacted a statute that presently provides in relevant part as follows: "[A]ny person who practices or attempts to practice, or who holds himself or herself out as practicing . . . [medicine] without having at the time of so doing a valid, unrevoked, or unsuspended certificate . . . is guilty of a public offense." (§ 2052, subd. (a); see Stats.

12

1980, c. 1313, pp. 4449, 4494, § 2.)[5]  In 2002, the Legislature modified the statute and in relevant part added the following provisions:  "Any person who conspires with or aids or abets another to commit any act described in subdivision (a) is guilty of a public offense. . . . [¶] . . . The remedy provided in this section shall not preclude any other remedy provided by law."  (§ 2052, subds. (b) & (c); Stats. 2002, ch. 1085, § 14.)

On the factual allegations for her UCL claim, Tonti summarizes in her briefing that Naficy "set[] up a medical practice where [he wa]s paid by Capo to sign off on prescriptions, based on a pre-arranged program with Capo, without incurring the time and expense of seeing the patients first, thus, entirely alleviating himself of the duty to exercise professional judgment and skill and instead delegating that role to Capo and its nonmedical employees."  In her amended complaint, Tonti alleges that "Naficy allowed himself to be employed and directed by" Capo, prescribed drugs to Tonti when she "was not under [] Naficy's care," and did so without an appropriate medical examination of Tonti.  Tonti also alleges the Capo staff member "Jeff Doe . . . was for all intents and purposes [Tonti's unlicensed] health care provider" and that when Doe called Naficy and advised "further medication was needed," Naficy prescribed the benzodiazepine without exercising independent judgment.

A reasonable reading of Tonti's allegations shows her UCL claim is based on a theory that Naficy was complicit in what Tonti asserts was a failure to provide promised "residential detoxification services" by a for-profit corporation.  Naficy claims no exception to the corporate practice ban (see, e.g., § 2411 [ban exception for HMO's]) and Tonti alleges she was deprived of the $10,000 she paid to Capo for promised services because, "fearing another relapse," she was effectively given no choice but to leave Capo,

---

[5]  "'Person' means any individual, partnership, corporation, limited liability company, or other organization, or any combination thereof, except that only natural persons shall be licensed under this chapter [including section 2052]."  (§ 2032.)

13

based on a chain of events triggered by a "black out" episode caused by Naficy's purportedly unlawful prescription.[6]

Without considering the probability of whether Tonti will be able to prove her factual allegations (*Nolte, supra*, 236 Cal.App.4th at p. 1406; see Code Civ. Proc., § 589 [demurrers raise questions of law]), we conclude those allegation are sufficient to support her theory for a UCL claim because, taken as true, they may reasonably support a conclusion that Naficy sufficiently assisted or encouraged a violation of California's "ban on the corporate practice of medicine" (*Cole, supra*, 38 Cal.4th at p. 970; see also *Steinsmith v. Medical Board* (2000) 85 Cal.App.4th 458 [restoring medical board's citation against physician for "aiding the unlicensed practice of medicine"]; and CACI No. 3610)). For these reasons, the demurrer to Tonti's sixth cause of action in her amended complaint should not have been sustained.

## D. Tonti Has Not Shown the Demurrer to Her Willful Misconduct Claim Was Improperly Sustained

Finally, Tonti contends the trial court erroneously sustained Naficy's first demurrer to Tonti's original complaint third cause of action which is labeled "intentional conduct" but urged by Tonti to assert a cause of action for "willful misconduct." As noted, Tonti did not amend her allegations for the claim even though the court granted leave to do so. (See *Ram, supra*, 234 Cal.App.4th at p. 22, fn. 3 ["A reviewing court normally 'resolve[s] all ambiguities and uncertainties raised by the demurrer against' the plaintiffs when, as here, a demurrer is sustained with leave to amend and the plaintiffs choose not to amend"].)

---

[6]  Our conclusions in this opinion should not be interpreted as views on the ultimate merits of the parties' respective contentions, including legal issues that may be relevant in subsequent stages of this litigation. (See, e.g., § 2242 [on parameters for prescribing "dangerous drugs"].)

Tonti states the trial court's ruling on the misconduct claim "set forth a completely correct analysis as to what the elements of the claim are" but she does not analyze the elements in her appellate briefing, nor does she present any supporting authority to demonstrate how they were satisfied by her complaint allegations. The court's ruling Tonti endorses relied on *Berkley v. Dowds* (2007) 152 Cal.App.4th 518. That appellate court discussed the theory of willful misconduct in the context of elder abuse law in part as follows: "'[W]illful misconduct' is recognized . . . not [as] a separate tort, but simply '"an aggravated form of negligence . . . Its pleading requirements are similar to negligence but stricter.'"'" (*Id.* at p. 526) "'"[T]hree essential elements must be present to raise a negligent act to the level of wilful [*sic*] misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril. [Citations.]"'" (*Id.* at p. 528; see *Perlin v. Fountain View Mgmt., Inc.* (2008) 163 Cal.App.4th 657 [holding violation of elder abuse statute "constitute[s] an independent cause of action"; opposite of conclusion in *Berkley*].)

As noted, Tonti contends her willful misconduct claim should have survived "[f]or the same reasons" her UCL claim should have survived, without meaningful discussion. The sole factual issue she briefs is her general pleading allegation that Naficy issued her a prescription without an examination.

There are two fundamental problems with Tonti's reliance on UCL analysis for her attempt to satisfy the elements essential for willful misconduct liability. First is the obvious differences between the respective elements. For example, the UCL requires no showing of a defendant's knowledge of probable injury to a plaintiff.

The second problem is that Tonti's third cause of action was alleged in her original complaint (and disposed of on Naficy's first demurrer), whereas Tonti's UCL claim allegations were thereafter elaborated in her amended complaint (and disposed of

15

on Naficy's second demurrer).  Particularly given that Tonti does not discuss the differences between the pleading iterations, her urging us to analyze the trial court's first demurrer ruling on Tonti's original third cause of action based on our analysis of her amended sixth cause of action does little to bridge the gap between her UCL violation theory and asserted theory of willful misconduct.  Sufficiently pleaded facts for a UCL violation or practice of unauthorized corporate medicine do not necessarily demonstrate aggravated negligence.  As to the sole factual issue mentioned in Tonti's appellate briefing, prescription without examination, we are not presented with any specific complaint allegation that Naficy knew injury was probable and we do not infer the point given Tonti's election not to amend her allegations.  (See *Ram, supra*, 234 Cal.App.4th at p. 22, fn. 3.)

In sum, we conclude that even assuming arguendo Tonti's willful misconduct claim should be recognized as a valid cause of action, she has not carried her burden to show why the trial court erred in sustaining Naficy's demurrer against it. (*Crawley, supra*, 243 Cal.App.4th at p. 404; see *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 ["'We are not bound to develop appellants' arguments for them'"].)

16

## DISPOSITION

The trial court's June 18, 2020 order sustaining respondent's demurrer to appellant's original complaint third cause of action is affirmed. The court's December 10, 2020 order sustaining respondent's demurrer to appellant's amended complaint sixth cause of action is reversed. The court's August 5, 2021 order granting summary judgment is also reversed. The matter is remanded for further proceedings consistent with this court's opinion. Appellant is entitled to recover her costs on appeal.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.