Filed 4/25/14  Green v. SA Recycling CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GARY GREEN, | B248855 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC472368) |
| v. | |
| SA RECYCLING, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elia Weinbach, Judge.  Affirmed.

Law Offices of Richard M. Foster, Richard M. Foster and Angela Berberyan for Plaintiff and Appellant.

Wood, Smith, Henning & Berman, Kevin D. Smith, Nicholas M. Gedo and Steven L. Rodriguez for Defendant and Respondent.

Appellant Gary Green (Green) sued SA Recycling, LLC (SA), for negligently maintaining its premises in a manner that caused injury to Green. SA filed a motion for summary judgment, demonstrating that the factual allegations of Green's complaint were untrue. Green opposed the motion by alleging facts and theories different than those in the complaint. The trial court granted summary judgment because SA negated the breach of duty and causation elements of the cause of action as stated in Green's complaint. Green did not seek leave to file an amended complaint. Rather, he filed this timely appeal.

We affirm because the complaint sets the boundaries of the issues to be resolved on summary judgment and a party cannot defeat summary judgment by moving the goalposts to territory beyond the complaint. A party who wishes to rely on new facts or theories must do so by timely seeking leave to amend.

## BACKGROUND

Green earned his living selling scrap metal and had been to SA's recycling yard on over 100 occasions for the purpose of selling scrap metal to SA. In December 2010, he was injured at the recycling yard, which resulted in his filing a complaint against SA for negligence.[1] After setting forth introductory material, including identification of the parties and Doe, agency and jurisdictional allegations, Green's complaint stated in pertinent part:

"9. Defendant [SA] is in the Recycling business and allows customers to bring scrap materials to their facilities to process for recycling [for] which they pay per pound. Customers are required to break up the materials to allow for them to be weighed prior to payment.

"10. On or about December 9, 2010, Plaintiff brought scrap materials to recycle at Defendant's business . . . .

---

[1] Green's wife originally sued for loss of consortium, but her cause of action was dismissed prior to judgment.

"11.  On the above date Plaintiff checked in with the office to process his recycling job.  Plaintiff noticed that the facility required hard [hats] and goggles to be worn, which they supplied for those using the facility.

"12.  Plaintiff asked for goggles to wear and was advised by the employee who checked him in that they had no goggles due to cut-backs.  The employee then provided a mallet and advised Plaintiff to proceed into the facility to prepare his materials for recycling.

"13.  While in the warehouse facility Plaintiff was breaking up the recycling materials so that they could be properly weighed and processed.  As he was doing this a piece of plastic from another's recycling flew through the air and struck Plaintiff in the right eye.

"14.  Plaintiff complained of pain and was promptly assisted by employees of Defendant.  The forklift driver and Saul the manager came to his aid.  Saul attempted to pull the plastic from his eye, at which time his right eye was pulled from the socket.  Saul popped the eye back in and gave Plaintiff a towel.  Plaintiff was assisted to his car and advised to proceed to the hospital."

Other than allegations concerning damages, and the abandoned loss of consortium claim, the foregoing are the material facts upon which the complaint was based.

SA moved for summary judgment based on the falsity of the foregoing allegations. The evidence SA submitted in support of its motion was calculated to show, and did show, that Green's own admissions in deposition and discovery responses established that the allegations of the complaint set forth above were untrue.

Green's opposition to the motion for summary judgment, his declaration, his points and authorities and responses to SA's separate statement (Green's opposition) directly contradicted the allegations of the complaint in numerous ways and set forth a different set of facts and theories through which he attempted to prevent summary judgment.  Whereas paragraphs 11 through 12 of the complaint stated that Green "checked in with the office to process his recycling job," asked for goggles there, was told there were none available due to cut-backs, and that he accepted a mallet the

3

employee gave him to break up his materials, Green's opposition stated that the "injury occurred while I was unloading my car before I could even get to the door of the warehouse where the protective gear was stored." His deposition testimony confirmed that, from the time he arrived at SA to the time of the accident, Green did not have any interactions with anyone from SA. Indeed, he had no intention of going to get goggles because he was not going to break up anything and he did not think it necessary to wear goggles for that.

Whereas paragraph 12 of the complaint stated that the employee who checked him in advised him "that they had no goggles due to cut-backs," Green's opposition stated that he did not get to the door of the warehouse at all before the injury — and thus could not have heard the words the complaint attributes to the SA employee or accepted a mallet from him.

Similarly, whereas paragraph 12 of the complaint stated that he was advised by the employee who checked him in that they had no goggles, his opposition stated that "on the date of the incident . . . there were no employees present on the dock to give out protective gear at this site."

Whereas paragraphs 12 and 13 of the complaint stated that Green "was breaking up the recycling materials," presumably with the mallet he had accepted, Green's opposition stated: "On this day I did not have any materials that I needed to break apart or clean."

Whereas the complaint stated that Green's injury occurred on the "processing floor" "in the warehouse facility" to which an employee had directed him his opposition stated that it occurred just as he was exiting his car where he had parked it.

Paragraph 14 of the complaint stated that "[t]he forklift driver and Saul the manager came to [Green's] aid. Saul attempted to pull the plastic from his eye, at which time his right eye was pulled from the socket" and that "Saul popped the eye back in and gave plaintiff a towel." Green's deposition testimony, however, is to the contrary. In the deposition, he stated under oath that no SA employee ever touched his person before or after he reported that something went into his eye. Green's opposition states: "After the

4

plastic hit my eye, I ran into the warehouse to wash my eye. I was asked by an employee of SA Recycling, what happened and told him that something hit my eye and that I could not see with my right eye. This employee took me to the eye washing station to wash my eye."

There also are other inconsistencies between the complaint and the opposition.

Green's theory of liability in the opposition also was not the theory of liability that he had pleaded in his complaint. In the complaint, Green alleged that SA "*required*" patrons to wear goggles, but negligently failed to supply them when he came in and asked for them. However, he admitted in his deposition that he had no intention of going to the office to get goggles because he did not intend to wear them on the day of the accident. Consequently, his new theory had to explain why he did not intend to put on goggles. The opposition argued that SA negligently *failed to require* goggles, negligently failed to enforce any policy recommending that goggles be worn, failed to require that they be worn at all times, failed to discipline or remove customers who failed to wear goggles, failed to provide sufficient staff to make goggles available, and created an environment in which the customer would have to pass through a dangerous area to get the goggles and would have to break up materials in an area that was unnecessarily dangerous as well. This theory is not set forth in the complaint.

The opposition also appears to have attempted to minimize any comparative fault of Green's in an entirely different way than alleged in the complaint. In the complaint, Green alleged he went into the office to ask for goggles and was sent away empty-handed. In the opposition he claimed he did not get the chance to go to the office to ask for goggles (even though he had no intention of going to get them) because he was hit by something as he was unloading his car. He further declared that he understood SA's policy to have been that customers only needed to wear goggles when they were actually breaking apart material. Since he was not breaking materials apart, he was acting within SA's flawed policy in not wearing goggles at the time of the accident.

Having tailored its discovery and motion for summary judgment to the facts and legal theories set forth in the complaint, SA found it had set its sights on a moving target.

5

The trial court granted summary judgment in part on the basis that SA had negated the essential elements of breach of duty and causation by showing Green never intended to wear goggles, notwithstanding the complaint's assertion that he did. The court also found that Green's opposition impermissibly relied on facts and theories alien to the complaint.

The record does not reflect any request by Green to amend his complaint at any time.

Green filed a motion for terminating sanctions that was heard and denied at the same time as the motion for summary judgment. In the motion, he alleged that SA had destroyed a digital recording from the date of the accident. SA presented evidence that the recording was destroyed before SA knew of the lawsuit, that SA had reviewed the recording prior to destruction and determined that it did not show Green or the accident, and that the recording had merely been automatically overwritten by new recordings in the regular course of the system's operation. Green has not appealed the denial of that motion.

## DISCUSSION

### A. Standard of review

"A moving party defendant is entitled to summary judgment if it establishes a complete defense to the plaintiff's cause of action, or shows that one or more elements of the cause of action cannot be established." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250.)

Appellate courts independently review an order granting summary judgment. (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 504–505.) "'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment. [Citation.]'" (*Id.* at p. 505.)

**B. The trial court did not err in granting summary judgment, as Green's opposition was based on facts and legal theories not contained in his complaint, which he did not seek leave to amend**

"[T]he pleadings set the boundaries of the issues to be resolved at summary judgment. [Citation.] A 'plaintiff cannot bring up new, unpleaded issues in his or her opposing papers. [Citations.]' A summary judgment or summary adjudication motion that is otherwise sufficient 'cannot be successfully resisted by counterdeclarations which create immaterial factual conflicts outside the scope of the pleadings; counterdeclarations are no substitute for amended pleadings.' [Citation.] Thus, a plaintiff wishing 'to rely upon unpleaded theories to defeat summary judgment' must move to amend the complaint . . . ." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648.) "If a party seeks to avoid summary judgment by going outside the pleadings, it is incumbent upon him to move to amend in a timely fashion." (*Dang v. Smith* (2010) 190 Cal.App.4th 646, 664.)

A long line of California cases have rejected attempts to oppose motions for summary judgment that rely on facts not pleaded in the complaint. (E.g., *Shugart v. Regents of University of California*, *supra*, 199 Cal.App.4th 499; *Dang v. Smith*, *supra*, 190 Cal.App.4th at p. 664; *Nein v. HostPro, Inc.* (2009) 174 Cal.App.4th 833, 851; *Laabs v. City of Victorville*, *supra*, 163 Cal.App.4th at pp. 1252–1258; *Lackner v. North* (2006) 135 Cal.App.4th 1188; *Oakland Raiders v. National Football League*, *supra*, 131 Cal.App.4th at pp. 646–650; *Scolinos v. Kolts* (1995) 37 Cal.App.4th 635, 640–641.)

For instance, in *Dang* the plaintiff sued her former attorneys for legal malpractice. "As initially framed, her complaint was largely predicated on defendants' failure to record a judgment lien against real property . . . ." (*Dang v. Smith*, *supra*, 190 Cal.App.4th at p. 650.) The defendants made a motion for summary judgment refuting the claim that they had failed to record the lien and also negated other allegations of the complaint. (*Id.* at p. 653.) In opposition to the motion for summary judgment, plaintiff offered three new theories of liability different than the those contained in the complaint. (*Id.* at p. 650.) These were that defendants had negligently permitted another party's

7

"interest in the property to be extinguished by his death," and that the defendants' advice that a certain contract was never formed and their advice that it was inadvisable to sue her previous attorney constituted professional negligence. (*Id.* at pp. 654, 663–664.) The appellate court observed that the motion for summary judgment was "premised on factual negation, by extrinsic proofs" that the central allegation of the complaint was untrue and held that, because the pleadings set the boundaries for a motion for summary judgment, plaintiff could not succeed in opposing the motion based on new facts not contained in the complaint. (*Id.* at p. 665.)

In *Lackner v. North*, *supra*, 135 Cal.App.4th 1188, a skier sued the Mammoth ski resort for injuries received when an out-of-control ski racer hit her while he was training in an area open to the general public. Her complaint alleged that Mammoth had breached its duty of care "by failing to enforce and supervise the race participants' use of ordinary ski runs and by failing to warn its patrons that race participants were permitted to train on ordinary ski runs." (*Id.* at p. 1201.) Plaintiff's statement of undisputed facts filed in opposition to Mammoth's motion for summary judgment alleged for the first time that Mammoth was liable to her because it had "failed to post warning signs in the area of the collision where it generally posted such signs." (*Id.* at p. 1201, fn. 5.) The court noted that the "pleadings 'delimit the scope of the issues' to be determined and '[t]he complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action. [Citation.] Lackner's separate statement of material facts is not a substitute for an amendment to the complaint. [Citation.] Because Lackner's complaint fails to allege facts that give rise to a duty to post such signs, she may not assert Mammoth's breach of that duty." (*Id.* at p. 1202, fn. 5.)

Green's appellate briefs compound his previous error in arguing principally that the new facts he alleges raise triable issues of fact that should preclude summary judgment. This ignores the rule recognized by the trial judge and this court that the pleadings set the boundaries of the issues to be resolved on summary judgment and that counterdeclarations that raise new facts and theories are no substitute for an amended complaint.

8

Contrary to his assertions on appeal, Green's supplementation of his previous discovery responses to reflect his more recent version of events is not a substitute for amendment to the complaint. References in Green's briefs to the destruction of the digital recording from the date of the accident also are not helpful to him on this appeal as they do not cure the deficiencies of his opposition to the motion for summary judgment and did not defeat the evidence supporting SA's motion for summary judgment. Similarly, his arguments that the trial court somehow entered judgment because it determined that he was 100 percent comparatively at fault or struck his complaint as a sham pleading are inconsistent with the record.

Green explains the discrepancies between the complaint and his later sworn testimony as being attributable to a language barrier between him and the attorney who prepared the complaint. That argument does not assist him because the allegations of the complaint have been demonstrated to be unsupportable. The reason is immaterial. When Green and his counsel realized the allegations of the complaint were untrue, they could have sought leave to amend, but did not.

We conclude that Green's opposition to SA's otherwise meritorious motion for summary judgment was improperly based on facts and theories not contained in the complaint and which the trial court was obliged to disregard. Green could have asked for leave to amend, but did not. Judgment was properly granted.

9

## DISPOSITION

The judgment is affirmed.  SA Recycling, LLC, is to recover its costs on appeal.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


ROTHSCHILD, Acting P. J.


JOHNSON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.